# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MEILING SERRANO AND EDDIE PINNIX,<br><br>Plaintiffs,<br><br>vs.<br><br>PFIZER INC., PHARMACIA LLC f/k/a/ PHARMACIA CORPORATION, PARKE, DAVIS & COMPANY LLC as successor-in-interest of PARKE, DAVIS & COMPANY, and WARNER-LAMBERT COMPANY LLC f/k/a WARNER-LAMBERT COMPANY,<br><br>Defendants. | Case No.: 3:20-cv-00462-FDW-DSC<br><br>**ORDER GOVERNING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

## ORDER

The Court has reviewed the Parties' Proposed Joint Order Governing Production of Documents and Electronically Stored Information. For good cause shown, IT IS ORDERED as follows:

### I. GENERAL PROTOCOLS

Nothing in this Stipulation Governing Production of Documents and Electronically Stored Information ("Protocol") alters a party's rights, obligations, and responsibilities under the applicable provisions of the Federal Rules of Civil Procedure, the United States District Court for the Western District of North Carolina's Local Rules, or any other applicable rules, orders, or decisional authority, nor does anything in this Protocol impose additional burdens beyond those imposed by the Federal Rules of Civil Procedure, the United States District Court for the Western District of North Carolina's Local Rules, or any other applicable rules, orders, or decisional authority. The Parties reserve all objections under these authorities for matters relating to the production of data that are not specifically addressed in this Protocol.

**A. Litigation Holds and Preservation**. If, during its document collection efforts, a party learns that responsive Electronically Stored Information ("ESI") that once existed was lost, destroyed, or is no longer retrievable, the producing party shall explain, to the extent that the information is reasonably available, where and when the ESI was last retrievable in its original format. Parties shall not be obligated under this Agreement to produce deleted ESI lost as a result of the routine, good-faith operation of an ESI system prior to the date a litigation hold was actually, or was required to be, put into effect, whichever first occurs. No Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes. In addition, Appendix 1 lists the types of ESI that need not be preserved or collected absent good cause shown by the requesting party.

**B. Identification and Search Terms**. The Parties will meet and confer to discuss the following in an effort to identify relevant documents to be reviewed during the discovery process: search term identification, file-type identification, de-duplication of documents, and date restrictions. In the event of a dispute, the Parties must meet and confer to discuss any issues or concerns surrounding applicable search terms or identification within fourteen days of any party's request for such conference. The fact that a document may have been retrieved by application of the agreed upon search terms shall not prevent any party from withholding from production such document for lack of responsiveness or privilege. In the event that any party determines in good faith, after attempting to use the agreed search terms, that its use of any of those search terms is unreasonably burdensome and inefficient, then it shall meet and confer with the party that propounded the document request to which it is responding. The requesting party shall negotiate in good faith to modify the agreed search terms. In the absence of a mutually acceptable agreement to modify the agreed search terms, the producing party may apply to the court to modify the terms of this Protocol.

**C. Custodians and Data Repositories**. The Parties may identify hard-copy documents or ESI: (a) by identifying and selecting custodians most likely to possess relevant documents; and (b) by applying the agreed upon search terms to those custodians' data sources; and/or (c) by identifying and selecting non-custodial data repositories likely to possess relevant documents. Each producing party may, at its election, review hard-copy documents or ESI that contains any agreed

upon search terms for responsiveness and privilege prior to production to the receiving party. Each party will be primarily responsible for identifying custodians, custodial data sources, and other data repositories which contain discoverable documents in its possession.

     **D.**     **Bates Numbering**. All images must be assigned a Bates number that: (1) must be unique across the entire document production; (2) must maintain a constant length (zero/0-padded) across the entire production; (3) must contain no special characters or embedded spaces; (4) must be sequential within a given document; (5) must not obscure any part of the underlying image; (6) must, to the extent possible, be oriented in the same manner as the majority of the text on the page.

     **E.**     **Replacements**. Any documents that are replaced in later productions shall be clearly designated as such, by appending an "R" to the production suffix. The producing party will identify all "R" documents in the production letter. When a party produces a replacement production indicated by "R," the receiving party must discard or return to the producing party all copies, including working copies, of the original, replaced image.

     **F.**     **Confidentiality Designations**. The producing party must brand any confidentiality or similar designation in a corner of the TIFF images pursuant to the protective order entered in this case. Those designations must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number. Matters pertaining to a party's assertion of confidentiality and related issues are addressed more fully in the Protective Order governing confidentiality of discovery materials.

     **G.**     **Redactions**. Any producing party may use redactions to protect attorney-client or attorney work product privileges or protected patient health information or other personal information. When a document is partially privileged, the document will be produced in TIFF image with the privileged portions redacted. No native ESI items will be produced for redacted items, except when producing redacted TIFF images is not technically reasonable. The TIFF image for a document produced in redacted form will be a label identifying the redacted area of the document. For redacted items which were originally ESI, unaffected, non-privileged metadata fields will be provided. Neither party is entitled to redact information from a responsive document on the basis of relevance. The fact that a party produces a document without redactions shall not constitute an

admission or concession that all portions of the document are relevant to claims or defenses in the action.

**H.     Attachments and Parent/Child Relationships**.  The parent-child relationships (the association between an attachment and its parent document) must be preserved.  Non-relevant attachments may be excluded from production.  All non-relevant attachments excluded from production should be produced as a slip sheet or placeholder.

**I.     Privilege Logs**.  For documents entirely withheld from production pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity, the designating party shall produce one or more privilege logs in Excel or a similar electronic form that allows text searching and organization of data.  Privilege logs will be produced on a rolling basis within ninety days following the production of the documents from which the privileged documents are withheld.  The log will contain the following information for each item not produced for reasons of privilege, to the extent providing this information will not destroy the privilege:  (1) the name(s) of the person(s) who created and received the document or a copy of it; (2) the date on which the document was sent and/or last modified; (3) a description of the nature of the document sufficient to enable the receiving party to assess the applicability of the privilege or protection; and (4) privilege(s) claimed.  For a chain of privileged emails, the Producing Party need include only one entry on the privilege log for the entire email chain and need not log each email contained in the chain separately so long as that entry is the most inclusive email in the chain.  The Producing Party is not required to include in its privilege logs (1) privileged communications with outside counsel whose representation is relevant to the subject matter of this lawsuit, or (2) partially-privileged documents that have been redacted and produced, provided the reason for the redaction (e.g., attorney-client privilege and work product) appears on the redaction label and in the produced metadata field, PRIVILEGE REASON.

**J.     Database Load Files/Cross-Reference Files**.  Documents must be provided with (1) a delimited metadata file (.dat or .txt); and (2) an image load file (.1fp, .opt, or .dii) as detailed in Appendix 2.

**K.     File Size Limitation/Non-Standard Files**.  To the extent necessary or practical, the format of production of unusually large files and non-standard electronic files, large oversized documents (e.g. blueprints) etc., will be discussed before production to determine the optimal production format.

**L.     Inadvertently Disclosed Information**.  In discovery in this lawsuit, the Parties have agreed that they do not intend to disclose information subject to a claim of attorney-client privilege or attorney work product protection.  If, nevertheless, a party (the "Disclosing Party") inadvertently discloses such privileged or work product information ("Inadvertently Disclosed Information") to another party (the "Receiving Party"), such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of attorney-client privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Inadvertently Disclosed Information and its subject matter.  If a Disclosing Party notifies the Receiving Party of Inadvertently Disclosed Information, the Receiving Party shall return or destroy, within fifteen business days, all copies of such information and upon written request provide a certification of counsel that all such Inadvertently Disclosed Information has been returned or destroyed.  After a Disclosing Party provides written notice of inadvertent production, a Receiving Party shall not copy, distribute, or otherwise use in any manner the disputed documents or information, and shall notify all persons to whom the Receiving Party has disseminated a copy of the documents or information that the documents or information are subject to this Stipulation and may not be copied, distributed, or otherwise used pending further notice from the Court.  Should any motion be filed challenging the protected nature of Privileged or Protected Information or Documents, the moving party shall not assert in support of such motion the fact or circumstances of the disclosure, whether mistaken, inadvertent or otherwise.  This section and its subparts shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502 or the state equivalent and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S. Code § 1738. In the event of any conflict of law, the law that is most protective of privilege and work product shall apply.

**M. Encrypted or Corrupt Files**. The producing party will take reasonable steps, prior to production, to unencrypt or restore any discoverable ESI that is encrypted (e.g., password protected) or corrupt, and will produce relevant, non-privileged documents that can be reasonably unencrypted or restored.

**N. Production Rules**. The producing party shall produce Documents as they exist in the ordinary course of business and therefore shall not be required to organize or label productions to correspond to specific discovery requests. Any Custodial Files or Non-Custodial Document Sources (collectively "Sources") will be produced in the reasonably usable and searchable format as set forth herein.

**O. Production Media**. The Parties agree that each will provide productions on the most appropriate media (e.g. CD, DVD, hard drive) or method (e.g. secure FTP) taking into account the type of data to be transferred, the volume of such data, and each party's system requirements. Information that shall be identified on the face of the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the Protective Order entered in this case if the Media contains Confidential Information. The face of the Production Media shall also indicate the Bates Number range(s) of the Documents contained in the Production Media.

**P. Resolution of Production Issues**. Documents that cannot be read because of imaging or formatting problems shall be promptly identified by the Receiving Party. The Parties shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

**II. PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

**A. General**. The procedures and protocols set forth in this Protocol shall govern the production of Electronically Stored Information ("ESI") in this matter, unless the Parties agree in writing to change them or they are changed by the Court at the request of a party. To the extent that third parties may produce documents in this case, the Parties agree to request that such third parties adopt this Agreement.

B.  **Avoidance of Duplicate Production**.  Among responsive files that any party may produce in this action or may list on a required privilege log, the party may take reasonable steps to de-duplicate ESI.

C.  **Metadata Fields and Processing**.  Each of the metadata and index fields set forth in Appendix 3 that can be reasonably extracted from a document will be produced for that document. If any party becomes aware of a problem extracting metadata or any other problem with the metadata fields or processing, the party who becomes aware of the problem must notify the other party and meet and confer with the other party to arrive at a mutually acceptable resolution to the issue.  The Parties are not obligated to populate manually any of the fields in Appendix 3 if such fields cannot be extracted from a document.

D.  **Native File Productions**.  Any native files that are produced must be produced with the applicable metadata fields set forth in Appendix 3.  The parties will produce all Microsoft Excel and any audio or video files as native files, unless redacted.  If a spreadsheet requires redactions it can be produced as a TIFF image with all rows and columns expanded and capable of being viewed within the TIFF image along with the extracted text and relevant Metadata identified in for the entire spreadsheet.  If a redaction in a spreadsheet causes a change in a formula or calculation, this will be indicated by the producing party at the time of production. If production in native format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the producing party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of the document in native format.  Any document produced in native format will have a corresponding place holder TIFF image for these records bearing the legend "Document Produced Natively."

E.  **TIFFs**.  Single page group IV compression TIFF images will be provided using at least 300 DPI print setting. Each image must have a unique file name, which is the Bates number of the image.  The producing party will make reasonable efforts to produce these TIFF images consistent with the appearance of the documents as kept in the ordinary course of business and will make reasonable efforts not to split or divide documents into multiple page TIFF images for the purposes of production where those documents are not maintained in a single page format.  The TIFF

image will include, when feasible and as applicable to the underlying ESI, visible and legible images of comments and hidden text contained within the native document. To the extent possible, applicable images of PowerPoints and Word documents will be produced as they are kept in the ordinary course of business and will include any tracked changes and notes.

  **F.**  **Embedded Objects**. Embedded objects will be extracted as separate documents and treated like attachments to the document.

  **G.**  **Compressed Files**. Compressed file types will be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

  **H.**  **Text Files**. For each document, a single UTF-8 encoded text file will be provided along with the image files and metadata. The text file name will be the same as the Bates number of the first page of the document to which it corresponds. File names must not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or any other native electronic file that does not contain text to extract (e.g. non-searchable PDFs). In these instances, a text file will be created using OCR and will be produced in lieu of extracted text. Except in the case of redacted documents, the receiving party will not be required to rely upon a less accurate version of the text than the producing party.

  **I.**  **Structured Data**. In instances in which ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties must produce the information in such a report form, in the reasonably usable TIFF-image format described above. If an existing report form is not reasonably available, then the Parties will meet and confer to find a mutually agreeable report form.

  **III.**  **PRODUCTION OF HARD-COPY INFORMATION**

  **A.**  **Hard-Copy Documents**. The Parties may produce hard-copy documents either in their hard-copy form or as scanned images. Documents are to be produced as they are kept in the ordinary course of business. The following sub-paragraphs apply to hard-copy documents produced as scanned images. Each hard-copy document must be scanned as black and white, single page,

8

Case 3:20-cv-00462-FDW-DSC   Document 31   Filed 01/13/21   Page 8 of 12

ORDER GOVERNING PRODUCTION OF DOCUMENTS AND
ELECTRONICALLY STORED INFORMATION

Group IV compression TIFF images using a print setting of at least three hundred dots per inch (DPI) with corresponding OCR text in document level .TXT format and standard load files which can be used with commercially available litigation software packages. Each image must have a unique file name, which is the Bates number of the image. To the extent technically available, original document orientation must be maintained (i.e., portrait to portrait and landscape to landscape). The Parties will accommodate reasonable requests for production of specific images in color.

B. **Index Fields**. For each hard-copy document, the following information must be produced and provided in the data load file at the same time that the TIFF images and the Optical Character Recognition (OCR) acquired text files are produced. Each index field must be labeled as listed below.

      (i)     BegBates,

      (ii)    EndBates,

      (iii)   BegAttach,

      (iv)   EndAttach,

      (v)    PageCount

      (vi)   Confidentiality, and

      (vii)  Custodian Name, to the extent available.

The Parties will meet and confer to discuss whether objective coding information for hard-copy documents should be exchanged.

C. **Unitizing of Documents**. Distinct documents must not be merged into a single record, and single documents will not be split into multiple records (i.e. hard-copy documents should be logically unitized). In the case of an organized compilation of separate documents — for example, a binder containing several separate documents behind numbered tabs — the document behind each tab should be scanned separately. The Parties will make their best efforts to unitize documents.

**SO ORDERED**.

Signed: January 13, 2021

David S. Cayer
United States Magistrate Judge

**APPENDIX 1: TYPES OF ESI THAT NEED NOT BE PRESERVED OR COLLECTED**

There is no need for the parties to preserve or collect ESI from the following sources absent good cause shown by the requesting party:

I. ESI deleted as a result of the routine, good-faith operation of an ESI system;

II. Backup data files maintained in the normal course of business for purposes of disaster recovery;

III. Unallocated, slack space, deleted data, file fragments, or other data accessible by use of computer forensics;

IV. Random access memory (RAM), temporary files, or other ephemeral data;

V. On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

VI. Data in metadata fields frequently updated automatically as part of the usual operation of a software application, such as last-opened or last-printed dates;

VII. Legacy data from systems or software applications no longer in use when such data cannot be read or interpreted by systems or software applications currently in use;

VIII. Structural files not material to individual file contents (e.g., .CSS, .XSL, .XML, .DTD, etc.).

IX. Operating system files, executable files, network, server, software application or system logs; and

X. Files on the NIST list.

XI. Telephone voice messages unless they are transcribed in the ordinary course of business;

XII. Text and Instant messages that are not regularly stored or saved on a server;

XIII. Cellular telephones (including smart phones);
Personal computers and personal e-mail not regularly used for business activities.

## APPENDIX 2: FILE FORMATS

### Image Load Files

Every document referenced in a production image load file must have all corresponding images, text and metadata.

The name of the image load file must mirror the name of the delivery volume and should have a .LFP, .OPT, or .DII extension.

The volume names must be reasonably consecutive (e.g. ABC001, ABC002...).

The load file must contain one line per image.

Every image in the delivery volume must be contained in the image load file.

The image key must be named the same as the Bates number of the image.

Load files must not span across media.

### Metadata Load Files

The metadata load file must use the following delimiters:

Column delimiter: ASCII 020

Text qualifier: ASCII 254

New line: ASCII 174

Data for documents must be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document.

The first record must contain the field names in the order of the data set forth in Appendix 3. All data/time fields must be produced in "YYYYMMDD HH:MM AM/PM (GMT)" format. A carriage-return line-feed must be used to indicate the start of the next document.

Load files must not span across media.

The name of the metadata load file must mirror the name of the delivery volume, and must have a .DAT extension.

The volume names must be reasonably consecutive (e.g. ABC001, ABC002...).

# APPENDIX 3: METADATA FIELDS

| FIELD | FORMAT | DESCRIPTION |
| --- | --- | --- |
| BEGDOC | Fixed-Length Text | Beginning Bates number |
| ENDDOC | Fixed-Length Text | Ending Bates number |
| BEGATTACH | Fixed-Length Text | Beginning of family range, first number of first family member |
| ENDATTACH | Fixed-Length Text | End of family range, last number of last family member |
| CUSTODIAN | Multiple Choice | Custodian name |
| DATE_CREATION | Date (date:time) | Creation Date File System |
| DATESENT | Date (date:time) | Sent Date for email |
| DATELASTMOD | Date (date:time) | Last Modified File System |
| FILEEXT | Fixed-Length Text | File Extension |
| FILENAME | Fixed-Length Text | File Name (efiles) |
| HASHVALUE | Fixed-Length Text | MD5Hash (or CONTROL_ID for scanned paper) |
| FILEPATH | Fixed-Length Text | PSIfield: [Relativity_Path] |
| BCC | Long Text | BCC Recipient Combined |
| CC | Long Text | CC Recipient Combined |
| FROM | Fixed-Length Text | Sender Combined |
| SUBJECT | Fixed-Length Text | Subject |
| TO | Long Text | Recipient Combined |
| PAGECOUNT | Whole Number | Page count |
| CONFIDENTIALITY | Fixed-Length Text | Confidentiality |
| PRIVILEGE_REASON | Multiple Choice | Privilege reason for redacted documents |